UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. SAG-22-0372 |
| : | |
| SIDDIQ REDD : | |
| : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by counsel, hereby submits its sentencing memorandum in the above-captioned matter. For the reasons discussed below, the government recommends a sentence of 121 months' imprisonment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Siddiq Redd has pled guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties jointly recommend a sentence of between 84 months' imprisonment and 135 months' imprisonment. The plea agreement (ECF 108, attached as Exhibit 1) details the Defendant's participation in two robberies and in two other episodes related to other robberies that were occurring during the timeframe. Specifically:

On December 20, 2021, the Defendant participated in the armed robbery of a 7-Eleven store in Clinton, Maryland (in Prince George's County). Two men, one armed with a handgun, entered the store and robbed it. The Defendant appears to have remained near the front entrance to the store and used a Frosted Flakes box to prop the store door open. The perpetrators fled in an escape vehicle after the robbery. Exhibit 1 at 11.

On December 27, 2021, the Defendant participated in another armed robbery, this time at

a convenience store called Discount Tobacco, also in Prince George's County.[1]  This robbery was even more violent than most armed robberies.  The Defendant (shown in the video in a green coat) was armed with what appeared to be a can of spray of some type.  The Defendant forced his way into a back cashier section behind plexiglass, despite a victim employee's attempts to keep him out, and was able to obtain approximately $2000-3000 in cash.  Exhibit 1 at 12.

A second store employee received even worse.  The Defendant's conspirator accosted that second victim in one of the aisles of the store and beat the victim.  Exhibit 1 at 11-12.  The victim was left with a bloodied face.

The plea agreement stipulation states that during the December 27 robbery, "[b]oth of the victims were restrained against their will, either at gun point and/or by being physically assaulted, during the robbery."  Exhibit 1 at 11.

Still images from the Discount Tobacco surveillance video are below:

---

[1] Surveillance video from the Discount Tobacco store captures the entirety of the robbery. Several still images from the surveillance video are included in this memorandum.  The government anticipates marking a copy of the video as an exhibit at sentencing and will provide an advance copy to the Court if useful.  Alternatively, the government will be prepared to play portions of the video during the sentencing.

2



*Second suspect (not Redd) grabbing victim in aisle while
Redd in green coat approaches cashier area*



*Different camera – Redd with spray can in hand approaching plexiglass booth.
Second suspect and victim in background*

3



*Redd forcing his way into plexiglass booth – struggle continues in background*



*View from camera inside plexiglass booth – victim on knees on ground with Redd stranding over victim*



*Redd taking victim to rear of plexiglass area (victim's hands are raised) – struggle between second suspect and victim in aisle*



*View from camera inside plexiglass booth.   Redd with handgun and spray can.*

5



*Second suspect kicking victim on ground*



*Camera view inside plexiglass booth.   Redd and victim are standing closet to the door again.*



*Redd appears to spray victim in face with spray before departing booth area.   Brownish cloud visible on upper right part of image*



*Victim on ground after Redd departs.*

The images show the aggravating aspects of the crime: the firearms, the accosting and beating and kicking of the victim in the aisle; Redd's forcing his way into the booth and holding

the victim at gunpoint, at one point with the victim on his knees; and then Redd even spraying the victim as Redd departed.

Additionally, the plea agreement stipulations link the Defendant to two other robberies (although indirectly). On March 23, 2021, the Defendant was arrested along with one of his codefendants in Prince George's County, Maryland. The two were in possession of a Mercedes vehicle that had been stolen during a carjacking the previous day. Police identified the stolen vehicle and approached the Defendant and his companion. The Defendant fled from the police and was apprehended. The companion was armed with a Glock 9mm handgun. An AM-15 rifle and ammunition were found in the Mercedes. Exhibit 1 at 11.

On September 3, 2021, police recovered an abandoned Volkswagen Passat vehicle that had been carjacked from Baltimore City on August 29, 2021, and then was used as an escape vehicle for two armed robberies before it was recovered. The Defendant's latent prints, along with latent prints of two suspected coconspirators, were found in the car, indicating that the Defendant had been in the vehicle at some point during that timeframe. Exhibit 1 at 11.

## SENTENCING GUIDELINES

The government and the plea agreement calculate the guidelines level as follows:

<u>Count Nine – December 20, 2021 robbery (stipulated conduct)</u>
Base offense level: 20
Increase by 6 levels due to use of a firearm
Adjusted: 26

<u>Count Eleven – December 27, 2021 robbery (count of conviction)</u>
Base offense level: 20
Increase by 6 levels for use of firearm
Increase by 2 levels due to bodily injury
Increase by 2 levels due to physical restraint
Adjusted: 30

>Multiple counts adjustment (U.S.S.G. § 3D1.4)
>Increase level 30 (Count Eleven) by 2 levels
>Adjusted: 32
>
>Acceptance of responsibility (U.S.S.G. § 3E1.1)
>Decrease 3 levels
>Final offense level: 29

The government also recommends a one-level upward departure, for the reasons discussed below, which would result in a final offense level of 30. *See* Exhibit 1 at 5 (¶ 6(c)) (listing potential disputed guidelines issues).[2]

There are two guidelines issues that the government will address in this memorandum: first, whether the physical restraint adjustment under U.S.S.G. § 2B3.1(b)(4) should be applied; and second, whether an upward departure is appropriate under U.S.S.G. § 5K2.21.

## I. PHYSICAL RESTRAINT ADJUSTMENT.

U.S.S.G. § 2B3.1(b)(4) provides for a 2-level upward adjustment if a person is "physically restrained to facilitate commission" of a robbery or other covered offense.

The plea agreement includes the physical restraint adjustment in its stipulations as to Count Eleven, the December 27, 2021 robbery. Exhibit 1 at 5 (¶ 6(b)). However, the presentence report (PSR) recommends against the physical restraint adjustment on the grounds that the victims were not "tied, bound, or locked up." *See* PSR ¶ 80 (citing U.S.S.G. § 1B1.1 application note 1(L), which defines "physically restraining"). The government respectfully disagrees with

---

2   The government also reserved the right to seek guidelines adjustments pertaining to the robbery in Count Nine. The government will not do so here. It appears that the disputed guidelines adjustments in Count Nine would not change the final guidelines level due to the multiple counts adjustment.

9

Probation. The physical restraint adjustment should be applied.

Courts considering whether to apply the physical restraint enhancement have done so even in cases in which a victim was not tied, bound, or locked up, provided that their freedom of physical movement was restrained against their will. *See, e.g., United States v. Dimache*, 665 F.3d 603, 608-09 (4th Cir. 2011) (applying physical restraint enhancement where robber forced victims to floor at gunpoint). In *Dimache*, the Fourth Circuit specifically rejected the notion that the physical restraint enhancement was limited to the examples listed in section 1B1.1. *See id.* at 608 ("The USSG § 2B3.1(b)(4)(B) enhancement is not limited to the examples listed in USSG § 1B1.1(K).") (citing *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir. 1989)). In short, the Fourth Circuit holdings in *Dimache* and *Stokley* make clear that the physical restraint adjustment should be applied, despite Probation's concerns about the § 1B1.1 definition stated in PSR ¶ 80.

The facts of this case warrant imposition of the physical restraint enhancement for the December 27, 2021 Discount Tobacco robbery. The victims were subject to the use of force – grabbing, holding, pushing, beating – that was certainly "physical." The victims were "restrained" in their movements, whether at gunpoint, by the physical conduct of the perpetrators grabbing and pushing them, or both. The Defendant personally forced his way into the plexiglass booth and unquestionably physically restrained the victim inside the booth from leaving; he held the victim at gunpoint, with the victim on his knees at one point, forcible escorted the victim to the rear area of the cashier booth, and then sprayed the victim's face with a chemical as he left. The factual stipulation in the plea agreement even states that "[b]oth of the victims were restrained against their will, either at gun point and/or by being physically assaulted, during the robbery." Exhibit 1 at 11. For all of these reasons, "physical restraint" was imposed on the victims and the

enhancement applies to the December 27, 2021 robbery.

## II. THE COURT SHOULD IMPOSE A ONE-LEVEL UPWARD DEPARTURE DUE TO THE UNCHARGED CONDUCT IN THE CASE.

The government also recommends an upward departure of one level in light of the uncharged conduct described in the factual stipulation. U.S.S.G. § 5K2.21 states that a sentencing "court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range."

In this case, the stipulated conduct in the plea agreement (Exhibit 1 at 11) justifies a one-level upward departure under that provision. The Defendant's presence in a stolen Mercedes on March 22, 2021; his flight from the police during that incident and the recovery of an AM-15 rifle from that Mercedes during that episode; and his fingerprints in a carjacked Volkswagen during September 2021 indicate a continued, ongoing association with a carjacking ring that is broader than just the events of December 2021. The Defendant also committed the two December 2021 robberies while he was pending state criminal charges arising from the March 2021 arrest. A one-level upward departure to account for those facts is appropriate.

If the Court imposes the one-level upward departure, the adjusted guidelines level will be 30, resulting in an advisory sentencing range of 97-121 months (at criminal history category I). Without the upward departure, the adjusted guidelines level will be 29, resulting in an advisory sentencing range of 87-105 months. The government's recommendation of 121 months' imprisonment is at the high end of the guidelines range as calculated by the government.

## 18 U.S.C. § 3553(a) FACTORS

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary," to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things)[3]:

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (18 U.S.C. § 3553(a)(2));

- the applicable guidelines level ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 121 months' imprisonment. The government will address particular factors in the following sections.

**A.   Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense (18 U.S.C. § 3553(a)(1), (a)(2)(A)).**

The Defendant committed two violent robberies, both armed, both calculated to inflict

---

3   The government has not copied the entirety of § 3553(a) into this memorandum. The portions of the statute cited herein are the portions the government believes most relevant to this sentencing.

12

terror on the victims of the robbed businesses.

On December 20, 2021, the Defendant and a partner robbed a 7-Eleven, and a victim had a gun pointed at them, wielded by the Defendant's partner. On December 27, 2021, the Defendant physically forced his way into a cashier area and physically accosted a victim in order to get money. Meanwhile, his partner beat another store employee and left that victim's face bloody. The victims were terrorized because of the way the Defendant and his accomplice (or accomplices) chose to carry out the robberies. The victims will likely live with that terror for the rest of their lives. The sentence should reflect the consequences of the crime on the lives of the victims.

### B.     History and Characteristics of the Defendant (18 U.S.C. §3553(a)(1)).

The Defendant has no prior criminal convictions and that is a factor that favors him. It is regrettable that the Defendant chose to begin his criminal career so violently.

However, the sequence of conduct in this case does suggest a particular risk of recidivism from the Defendant. The stipulated facts indicate that the Defendant continued to get involved in criminal activity notwithstanding law enforcement intervention and while the Defendant was pending criminal charges and was on pretrial release in a state criminal case. On March 23, 2021, the Defendant was arrested by Prince George's County Police and incurred gun charges (PSR ¶ 50, incident described in plea agreement stipulation, Exhibit 1 at 11); while those state criminal charges were pending, the Defendant committed both the December 20 and December 27, 2021 robberies. The Defendant's failure to be deterred by an arrest and his decision to commit robberies even with criminal charges pending suggest a risk of future criminal conduct (despite the Defendant's absence of prior convictions).

### C. The Need for the Sentence to Serve the Purposes Under 18 U.S.C. § 3553(a)(2).

As discussed above, the government's recommended sentence would properly reflect the seriousness of the offense. *See* 18 U.S.C. § 3553(a)(2)(A). Other relevant § 3553(a)(2) purposes include the following:

- The terror inflicted on the victims and the risk to those victims' lives require a sentence that will provide a reasonable measure of just punishment and that will promote respect for the law. 18 U.S.C. § 3553(a)(2)(A).

- The particular violence of the robberies demonstrates a need to protect the community from further crimes of the Defendant. 18 U.S.C. § 3553(a)(2)(C). No member of the community should be put risk of going through what the victims of this crime experienced.

- The robberies warrant a clear message of general deterrence. 18 U.S.C. §3553(a)(2)(D). The sentence should be calculated to deter particular decisions made by the Defendant and his accomplices: the decision to use weapons, the decision to beat a victim, and the decision to commit these violent crimes in such an especially violent manner.

The government's recommended sentence of 121 months' imprisonment will serve those purposes.

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence the Defendant to 121 months' imprisonment.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney


By:          /s/
        Michael C. Hanlon
        Assistant United States Attorney

        36 South Charles Street
        Fourth Floor
        Baltimore, Maryland 21201
        410-209-4895
        Michael.hanlon@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2024, a copy of the foregoing Motion was sent by ECF service to:

Joseph Murtha, Esquire

_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

˘16˘