JTW: 06.18.24



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Michael C. Hanlon<br>Assistant United States Attorney | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4895<br>MAIN: 410-209-4800<br>FAX: 410-962-9293<br>Michael.Hanlon@usdoj.gov |

USDC - BALTIMORE
'24 SEP 16 AM 10:45

June 17, 2024

Joseph Murtha, Esquire

    Re:    United States v. Siddiq ~~Alain~~ *Alim* Redd
           Criminal No. SAG-22-0372

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Siddiq *Alim* Redd (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by ~~June 30, 2024~~ *August 30, 2024* [JM], it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count Eleven of the Indictment, in which he is charged with Interference with Interstate Commerce by Robbery (Hobbs Act Robbery) in violation of 18 U.S.C. § 1951(a). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offenses

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count Eleven

That on or about the time alleged in the Indictment, in the District of Maryland, the Defendant:

        i.    That the Defendant knowingly obtained or took the personal property of another, or from the presence of another, and

Rev. August 2018

1

  ii. The Defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and

  iii. the stolen property affected interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

## Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 7 | 18 U.S.C. § 1951(a) | N/A | 20 years | 3 years | $250,000 | $100 |

  a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

  d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.   The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.   If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.   If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.   If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.   The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.   If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f.   By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts

3

of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

   a. The plea agreement contains a stipulation establishing the defendant's commission of the crimes charged in Counts Nine and Eleven, as well as the conduct as set forth in the factual stipulation. Therefore, the guidelines are calculated as if the defendant pled guilty to all of the counts and/or criminal offenses to which he is admitting, pursuant to U.S.S.C. § 1B1.2(c).

   b. The guidelines levels are as follows:

### Count Nine (12/20/2021 robbery) (Count Nine)

4

        Base offense level: 20 (2B3.1)
        Increase 6 levels (firearm used, 2B3.1(b)(2))
        Total: at least 26

        <u>Count Eleven (12/27/2021 robbery)</u>
        Base offense level: 20 (2B3.1)
        Increase by 6 levels (firearm used 2B3.1(b)(2))
        Increase by 2 levels (bodily injury to victim 2B3.1(b)(3))
        Increase by 2 levels (physical restraint used 2B3.1(b)(4))

        <u>Multiple Counts Adjustment</u>
        Number of units: 2
        Increase 2 levels (3D1.4)

        Adjusted offense level: 32

c.    The parties agree that the following guidelines issues are in dispute:

        Whether the "bodily injury" adjustment (U.S.S.G. §2B3.1(b)(3)) applies with respect to Count Nine;

        Whether the "physical restraint" adjustment (U.S.S.G. 2B3.1(b)(4)) applies to counts Count Nine; and

        Whether an upward departure of up to two levels is appropriate based on the nature of the offense, incidents not taken into consideration in by the guidelines grouping provisions, and/or dismissed or uncharged conduct (U.S.S.G. §§ 5K2.0, 5K2.21).

d.    This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an **additional one-level decrease** in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

5

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11(c)(1)(C) Plea

9. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a **sentence of no less than 84 months and no more than 135 months' imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine, or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

10. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any dismissed counts. At the time of sentencing, this Office will move to dismiss any open counts pending in the above-referenced case number.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground

6

whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

        b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

        c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in any money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described above and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.     The Defendant agrees to assist fully in the forfeiture of the property described above. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable,

statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Abandonment

17. The Defendant knowingly and voluntarily waives any right, title, and interest in the following property: a Glock 43X 9mm handgun, bearing serial number BLYN989, and approximately eight rounds of 9mm ammunition loaded therein; and one AM-15 rifle, bearing serial number 16100463, and approximately two rounds of ammunition loaded therein (the "Abandoned Property") and consents to its federal administrative disposition, official use, and/or destruction.

18. The Defendant understands that he would have a right to file a claim to the Abandoned Property under 41 C.F.R. § 128-48.102-1 and waives his right to claim the Abandoned Property under 41 C.F.R. § 128-48.503. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

### Restitution

19. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Defendant's Conduct Prior to Sentencing and Breach

20. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

22. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek Barron
United States Attorney

_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

__8/20/2024__     __Siddiq Alim Redd__
Date              Siddiq ~~Alain~~ Redd
                       Alim

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

__8/20/2024__     __Joseph Murtha__
Date              Joseph Murtha, Esquire

10

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

During the timeframes listed herein, the defendant Siddiq Redd joined in and participated in a conspiracy to commit robberies of commercial businesses and carjacking. During the course of that conspiracy, Redd participated in the armed robberies and the other conduct set forth herein. Redd committed the robberies with other conspirators who also participated in the robberies.

On March 23, 2021 at approximately 10:16pm, the Defendant was arrested along with a coconspirator in this case. The two were in possession of a Mercedes vehicle that had been carjacked the day before from a 7-11 store in Prince George's County, Maryland. Police found the carjacked Mercedes at the 51 Liquors Store in Prince George's County, Maryland. The Defendant initially fled when police approached and apprehended after a short foot-chase. Police arrested the co-conspirator as he was leaving the store. The co-conspirator was found in possession of a Glock 43X 9mm handgun serial number BLYN989, loaded with ammunition. An AM-15 rifle, serial number 16100463 and ammunition were recovered from the Mercedes.

On September 3, 2021, the Defendant possessed, jointly, with coconspirators, a Volkswagen Passat that had been carjacked on August 29, 2021 from a parking garage in Baltimore City. The Volkswagen Passat was used as an escape vehicle on September 2 and September 3, 2021 in connection with commercial robberies of two businesses. The Volkswagen Passat was abandoned at a location in the District of Columbia. Police recovered the Volkswagen Passat and found latent prints in or on the Passat for the Defendant and for two other persons believed to be conspirators in this case.

On December 20, 2021, Redd participated in the armed robbery of a 7-Eleven store located in Clinton, Maryland. Two men entered the store, brandished a handgun, and robbed the store. A third participant waited in a black getaway vehicle outside. Inside the store, two robbers brandished handguns and require a store employee, at gunpoint to hand over store money. The Defendant used a Frosted Flakes cereal box to prop the front door to the store open during the robbery. The Defendant's latent prints were recovered from the Frosted Flakes box (specifically, latent prints from his right finger(s) consistent with the manner in which he was holding the cereal box as seen on surveillance images). The two men from inside the store and the driver fled the store in the getaway vehicle after the robbery.

On December 27, 2021, Redd participated in the armed robbery of a 24/7 Discount Tobacco store located in Prince George's County, Maryland. Two robbers entered the store while two victim employees were working. One of the robbers physically assaulted and beat one victim who was accosted in an aisle of the store while working at a shelf. The second robber, the Defendant Redd, forced his way into a cash register area which was enclosed by polycarbonate

11

glass. A victim inside the enclosure tried to keep the robber out, but the robber pushed his way in (fingerprints of Siddiq Redd were found on the glass). Redd obtained approximately $2000-3000 in cash. Redd also pepper-sprayed the victim while inside the cash register area. Both of the victims were restrained against their will, either at gun point and/or by being physically assaulted, during the robbery.

The defendant admits that he committed the aforementioned armed robberies. The defendant agrees that the businesses described above – including the 7-Eleven Stores and the 24/7 Discount Tobacco store - engaged in and participated in interstate commerce during the course of their operations. Among other things, the 7-11 store was part of a multi-state retail chain; and both stores sold products that had been transported into Maryland from out of state. The businesses used the revenues of their sales to continue to engage in interstate commerce and/or to convey portions of the proceeds of their business to any multi-state chains or businesses of which they were part. The robberies described above affected, interfered with, and obstructed the interstate commerce activities of the business by disrupting the actual business operations of the businesses and by depriving the businesses of money and products that were part of their interstate commercial activities, including products that had been manufactured outside Maryland.

SO STIPULATED:

Michael C. Hanlon
Assistant United States Attorney

Siddiq ~~Alain~~ Redd
Defendant **Alim**

Joseph Murtha, Esquire
Counsel for Defendant

12